IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LARRY AND I.A. "PAT" PATTERSON ET. AL., § § | |
| Plaintiffs, § | |
| § | CIVIL ACTION NO. 2-06-CV-443 (TJW) |
| v. § | |
| § | |
| NEXION HEALTH, INC. D/B/A/ § | |
| SHERMAN HEALTHCARE CENTER § | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

After considering the submissions and the arguments of counsel, the court issues the following order concerning Defendant Nexion Health at Sherman, Inc. d/b/a Sherman Healthcare Center's "Nexion" Motion to Dismiss and Motion to Compel Arbitration and Abatement (# 14 ):

Willie Faye Patterson ("Mrs. Patterson") resided at the Sherman Healthcare Center from August 2005 to March 2006. Incident to residing at the Sherman Healthcare Center, a representative of Mrs. Patterson, I.A. Patterson–a party to this litigation–signed a Resident and Facility Arbitration Agreement on Mrs. Patterson's behalf (the "Arbitration Agreement"). There is no evidence in the record showing that a lawyer advised Mrs. Patterson concerning the Arbitration Agreement. The Arbitration Agreement includes only I.A. Patterson's signature and the signature of a representative of Defendant.

Mrs. Patterson died on May 31, 2006. Plaintiffs allege that Mrs. Patterson's death was proximately caused by Defendant's negligence. Plaintiffs assert claims in this litigation against Defendant on behalf of Mrs. Patterson as well individual claims for damages they allegedly suffered. Defendant moves the court to compel arbitration and dismiss Plaintiffs' claims. Defendant argues that Mrs. Patterson signed an enforceable arbitration agreement requiring the claims at issue to be

resolved via arbitration.

The Supreme Court has articulated four general principles to guide the courts in assessing the arbitrability of a dispute. First, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'" *AT&T Techs., Inc., v Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960)). Second, "the question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649 (citing *Warrior & Gulf*, 363 U.S. at 582-83). Third, the court may not rule on the merits of the underlying claims when determining the arbitrability of the underlying claims. *See id.* at 106. Finally, if a contract includes an arbitration clause, then there is a presumption that the claims are arbitrable. *See id.* "In determining whether the dispute falls within the scope of the arbitration agreement, ambiguities . . . '[are] resolved in favor of arbitration.'" *Fleetwood Enters. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir. 2002)(citing *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)).

The Fifth Circuit Court of Appeals has provided a two-step analysis to use when considering a motion to compel arbitration under the Federal Arbitration Act (the "FAA"). *See Tittle v. Enron Corp.,* 463 F.3d 410, 418 (5th Cir. 2006). "First, a court must 'determine whether the parties agreed to arbitrate the dispute in question.'" *Id.* (citing *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *Mitsubishi Motors Corp., v. Soler Chrysler-Plymouth*, 477 U.S. 614, 626 (1985)). Next, "a court must determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Tittle,* 463 F.3d at 418 (citing *Mitsubishi Motors*, 473 U.S. at 628).

Plaintiffs argue, *inter alia,* that the Arbitration Agreement is not enforceable and that Mrs. Patterson did not agree to arbitrate the dispute. Specifically, Plaintiffs contend that the agreement to arbitrate did not comply with Chapter 74 of the Texas Civil Practice and Remedies Code. Plaintiffs urge that the McCarran-Ferguson Act ("MFA") creates an exception to the law that the FAA preempts state law related to arbitration. Alternatively, Plaintiffs argue that Mrs. Patterson and Defendant were the only parties to the Arbitration Agreement (in the event that the court determines that the Arbitration Agreement is enforceable). As a result, as non-signatories, Plaintiffs contend that the court should not require them to arbitrate their claims.

With respect to the first argument, section 74.451 of the Texas Civil Practice and Remedies Code (formerly Article 4590i, Section 15.01(a) states the following:

> (a) No physician, professional association of physicians, or other health care provider shall request or require a patient or prospective patient to execute an agreement to arbitrate a health care liability claim unless the form of agreement delivered to the patient contains a written notice in 10-point boldface type clearly and conspicuously stating:
>
> UNDER TEXAS LAW, THIS AGREEMENT IS INVALID AND OF NO LEGAL EFFECT UNLESS IT IS ALSO SIGNED BY AN ATTORNEY OF YOUR OWN CHOOSING. THIS AGREEMENT CONTAINS A WAIVER OF IMPORTANT LEGAL RIGHTS, INCLUDING YOUR RIGHT TO A JURY. YOU SHOULD NOT SIGN THIS AGREEMENT WITHOUT FIRST CONSULTING WITH AN ATTORNEY.

Tex. Civ. Prac & Rem. Code § 74.451 (2003).

The Arbitration Agreement did not comply with section 74.451. It did not include a signature of Mrs. Patterson's attorney. Furthermore, it did not include the requisite statutory language. Instead, the Arbitration Agreement included the following language:

**The parties understand and agree that by entering this Arbitration Agreement, they are giving up and waiving their constitutional right to have any claim decided in a court of law before a Judge and a jury.**

Additionally, the Arbitration Agreement stated that the "[r]esident understands that (1) he/she has the right to seek legal counsel concerning this agreement . . . " The language concerning the right to counsel was not typed in boldface or otherwise conspicuous. If section 74.451 applies to this case, it would operate to invalidate the Arbitration Agreement.

Generally, the FAA preempts state laws relating to arbitration. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996). An exception exists under the MFA. The MFA states in relevant part that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance. . . ." 15 U.S.C. § 1012(b) (2007). "By its terms, the Act [MFA] permits a state law to reverse pre-empt a federal statute only if: (1) the federal statute does not specifically relate to the 'business of insurance,' (2) the state law was enacted for the 'purpose of regulating the business of insurance,' and (3) the federal statute operates to 'invalidate, impair, or supersede' the state law.' There is no question that the FAA does not relate specifically to the business of insurance." *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998). "The class of laws enacted 'for the purpose of regulating the business of insurance' is broad and consists of those laws 'that possess the end, intention, or aim of adjusting, managing, or controlling the business of insurance.'" *Id.* (citing *United States Treasury Dept. v. Fabe,* 508 U.S. 491, 505 (1993)).   The question presented in this case is whether Chapter 74 of the Texas Civil Practice and Remedies Code is a state law that was enacted for the purpose of regulating the business of insurance. The only authority located by the Court holds that Chapter 74 of the Texas Civil Practice and Remedies Code was enacted for the purpose of regulating the

business of insurance. *In re Kepka*, 178 S.W. 3d 279 [1st Dist.] 2005. That court reasoned that the statute was enacted as a comprehensive effort to regulate medical malpractice liability insurance premiums. As such, the court concluded that the relevant statutory provision was part-in-parcel of a broader effort to regulate the business of insurance in Texas. The court concluded that the MFA "reverse pre-empted" the FAA under such circumstances. *See id.*

Based on the holding of *Kepka* and the absence of any contrary authority, this court concludes that Section 74.451 of the Texas Civil Practices and Remedies Code was enacted for the purpose of regulating insurance. The requirements for application of the MFA are satisfied, and the state law requirements, rather than those contained in the FAA, apply to this case. The Arbitration Agreement does not comply with the requirements of Section 74.451 and the court declines to enforce it.

Alternatively, the court notes that if the Arbitration Agreement were valid, then any survival claims brought by Plaintiffs on behalf Mrs. Patterson and Mrs. Patterson's estate would be subject to the arbitration provision executed on Mrs. Patterson's behalf. However, Larry and I.A. Patterson's respective wrongful death claims, brought as statutory beneficiaries, would not be arbitrable because they did not sign an Arbitration Agreement (I.A. Patterson signed the Arbitration Agreement only as Mrs. Patterson's representative), and there is no evidence in the record that either Larry or I.A. Patterson agreed to arbitrate their individual claims. *See In re Kepka*, 178 S.W. 3d 1279; *see also Washburn v. Beverly Enterprises-Georiga, Inc.*, 2006 WL 3404804 (S.D. Ga. 2006).

The court hereby DENIES Defendant's Motion to Dismiss and Motion to Compel Arbitration and Abatement.

SIGNED this 9th day of July, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE